UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

PARIS CHERER,

             Plaintiff,

v.

DEPUTY CHIEF FRAZIER,
LIEUTENANT FREEMAN, SERGEANT
BALDWIN, OFFICER TREMAR, AND
OFFICER CANDIA,

             Defendants.

2:06-CV-00502-PMP-LRL

<u>ORDER</u>

     Presently before the Court is Defendants' Motion for Summary Judgment (Doc.
#43), filed on April 20, 2007. Plaintiff filed an Opposition and Motion to Set Calendar
Date for Trial (Doc. #45, #46) on May 31, 2007. Defendants filed a Reply (Doc. #47) on
June 14, 2007. Plaintiff filed a Response to Defendant's Reply to Opposition and Motion to
Set a Calendar Date for Trial (Doc. #49) on June 19, 2007.

**I. BACKGROUND**

     At all relevant times, Plaintiff was housed at a detention center operated by the
City of Las Vegas Department of Detention and Enforcement ("Department"). Defendant
William Fraser ("Fraser") was the Deputy Chief of the detention center. (Opp'n to Mots.
for Sanctions [Doc. #32], Ex. F at 1.) Defendant Joseph Freeman ("Freeman") was a
lieutenant at the detention center. (Opp'n to Mots. for Sanctions, Ex. G at 1.) Defendant
Debra Baldwin ("Baldwin") was a classification sergeant at the detention center. (Opp'n to
Mots. for Sanctions, Ex. H at 1.) Defendants Allan Tremar ("Tremar") and Ravyn Candia

("Candia") were officers at the detention center.  (Opp'n to Mots. for Sanctions, Ex. I at 1, Ex. J at 1.)

On August 16, 2005, the United States Marshall's Service booked Plaintiff into the detention center.  (Mot. for Summ. J. [Doc. #43], Ex. 1 ["Fraser Decl."] at 1.)  Later that day, a Federal Bureau of Investigations agent contacted the detention center and informed staff that according to Plaintiff's family, Plaintiff had made statements in court threatening to commit suicide.  (Id.)  Detention center staff placed Plaintiff on suicide watch pending a psychological review.  (Id.)  After the staff psychologist conducted the review, Plaintiff was released from suicide watch and returned to the general population. (Id.)

On August 19, 2005, Plaintiff's grandfather-in-law contacted the detention center to express his concern that Plaintiff was suicidal.  (Id.)  A sergeant spoke with Plaintiff who denied talking to his grandfather-in-law and denied being suicidal.  (Fraser Decl. at 1 & Ex. A-1.)  Despite Plaintiff's denials, the sergeant and a classification officer decided to transfer Plaintiff to the segregation unit for observation and psychological review.  (Fraser Decl. at 2.)  When Plaintiff learned he was about to be transferred, he climbed onto the railing of the second floor balcony and dove onto the floor below.  (Id.)  Plaintiff sustained serious injuries, including rib fractures, and was taken to the hospital.  (Fraser Decl. at 2; Opp'n to Mot. for Summ. J. [Doc. #45], Ex. A-9.)

Upon returning to the detention center, the staff placed Plaintiff on suicide watch. (Fraser Decl. at 2.)  On August 29, 2005, the classification committee reviewed Plaintiff's situation and kept him on suicide watch with constant officer monitoring.  (Fraser Decl. at 2 & Ex. A-2.)  Department policy provides that inmates exhibiting suicidal behavior are to be placed in the administrative/segregation isolation unit.  (Opp'n to Mot. for Summ. J., Ex. A-3.)  However, Plaintiff was placed in intake room 7A, a room with a large window on the door.  (Fraser Decl., Exs. A-2 through A-14 ; Opp'n to Mot. for Summ. J., Ex. A-2.)  Room

7A is very close to the medical clinic where arriving inmates are screened and processed. (Opp'n to Mots. for Sanctions, Ex. F at 3.)  Female guards regularly work in the intake area. (Mot. for Sanctions Against Defs. Pursuant to Rule 37(c)(2) [Doc. #30], Am. Responses to Pl.'s First Request for Admissions to Sergeant Baldwin at 4.)

On September 5, 2005, the classification committee again reviewed Plaintiff's situation. (Fraser Decl. at 2 & Ex. A-3.)  The medical staff recommended releasing Plaintiff from suicide watch. (Fraser Decl. at 2 & Ex. A-3.)  However, Department policy provides that an inmate will be removed from suicide watch only if the shift supervisor and classification staff agree with the medical staff's recommendation.  (Mot. for Summ. J., Ex. 2 at 8.)  Defendant Freeman and the classification committee decided to keep Plaintiff on suicide watch.  (Fraser Decl. at 2 & Ex. A-3.)

The classification committee reviewed Plaintiff's status again on September 13 and September 20, 2005, and decided to maintain Plaintiff on suicide watch despite the medical staff's indications that Plaintiff needed company and might fare better with a roommate.  (Fraser Decl. at 2-3 & Exs. A-4, A-5; Opp'n to Mot. for Summ. J., Ex. A-8.) Plaintiff started exercising alone for one hour as of October 1, 2005.  (Fraser Decl., Exs. A-6, A-7, A-8, A-9.)  The classification committee again reviewed Plaintiff's status on October 5, October 12, October 19, October 30, and November 29, 2005, each time deciding to maintain Plaintiff on suicide watch.  (Fraser Decl., Exs. A-6, A-7, A-8, A-9, A-10.)

On December 12, 2005, Defendants Freeman and Baldwin visited Plaintiff's room and Plaintiff told them his ribs still hurt but he was getting better.  (Civil Rights Compl. Pursuant to 42 U.S.C. § 1983 [Doc. #13, "Am. Compl."] at 4.)[1]  Plaintiff also told

---

[1] The Court treats a verified complaint based on personal knowledge and sworn to be true and correct as an affidavit. <u>Johnson v. Meltzer</u>, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).  The Court therefore considers the sworn facts based on Plaintiff's personal knowledge stated in Plaintiff's

Freeman and Baldwin that it was cold in the room and he was dressed in only a thin garment.  (Id.)  Defendants stated they would fix the vent in Plaintiff's room but the vent was not fixed during Plaintiff's stay in the room.  (Id.)  Plaintiff told Freeman and Baldwin he was isolated in the suicide watch room and requested he be released to a regular room, particularly with the holidays approaching.  (Id.)  Plaintiff also requested more time out of his room.  (Id.)  Defendants indicated he would remain on suicide watch and would not get more time out of his room.  (Id.)

On December 17, 2005, Defendant Officers Tremar and Candia removed Plaintiff's belongings from his room, including Plaintiff's legal paperwork and two mattresses.  (Opp'n to Mot. for Summ. J., Ex. A-12, Ex. A-13; Opp'n to Mots. for Sanctions, Ex. I at 2; Am. Compl. at 5.)  Plaintiff told Tremar and Candia he needed two mattresses because his ribs were cracked and still healing.  (Am. Compl. at 5.)  Plaintiff tried to sit on the cement floor but could not sit for long due to pain in his ribs.  (Id.)  After Plaintiff cried "for hours," another sergeant provided Plaintiff a mattress.  (Id.)

On December 30, 2005, Defendant Fraser met with Plaintiff and Plaintiff cried and informed Defendant Fraser that his belongings were removed from his room, including the two mattresses he needed for his cracked ribs.  (Opp'n to Mots. for Sanctions, Ex. F at 2; Am. Compl. at 6.)  Fraser told Plaintiff he would try to get the mattresses back for Plaintiff.  (Am. Compl. at 6.)  Plaintiff asked to be removed from suicide watch but Fraser told Plaintiff he was a liability for the City of Las Vegas and was being kept on suicide watch for administrative reasons.  (Id.)  At some point thereafter, the two mattresses were returned to Plaintiff's room, but Defendant Tremar removed them a second time while Plaintiff was on suicide watch.  (Opp'n to Mots. for Sanctions, Ex. I at 3; Opp'n to Mot. for Summ. J., Ex. A-13.)

_____

Amended Complaint as evidence on summary judgment.  Id.; Am. Compl. at 9.

1    The classification committee again reviewed Plaintiff's situation on January 9,

2   2006, but kept him on suicide watch.  (Fraser Decl., Ex. A-11.)  On February 3, 2006, the

3   classification committee transferred Plaintiff from suicide watch to administrative

4   segregation.  (Fraser Decl. at 3 & Ex. A-12.)  From August 26, 2005 through February 3,

5   2006, Plaintiff remained on suicide watch in intake room 7A, and Defendants did not hold a

6   classification or administrative hearing to permit Plaintiff an opportunity to state his reasons

7   to be let off suicide watch.[2]  (Opp'n to Mot. for Summ. J., Ex. C.)

8    While on suicide watch, Plaintiff was not permitted pencils, soap, or a

9   toothbrush.  (Opp'n to Mot. for Summ. J., Ex. A-14; Mot. for Sanctions, Am. Response to

10   Pl.'s First Request for Admissions to Sergeant Baldwin at 6.)  Department policy prohibits

11   inmates on suicide watch from having potentially harmful items and requires staff to give

12   the inmate a suicide smock to wear.  (Mot. for Summ. J., Ex. 2 at 5-6.)  Plaintiff suffered

13   from poor sleep and he lost significant weight while on suicide watch.  (Opp'n to Mot. for

14   Summ. J., Exs. A-6 at 3, A-8.)  Plaintiff also developed a rash.  (Opp'n to Mot. for Summ.

15   J., Ex. 2.)

16    Plaintiff filed suit in this Court on April 20, 2006.  (Application to Proceed in

17   Forma Pauperis [Doc. #1], Civil Rights Compl. Pursuant to 42 U.S.C. § 1983.)  Plaintiff

18   filed an Amended Complaint on June 1, 2006.  (Am. Compl.)  Plaintiff alleges Defendants

19   violated his Eighth Amendment rights by (1) keeping him on suicide watch in a cold room

20   while wearing a thin garment even after medical staff had cleared him for release from

21   suicide watch (count one); (2) removing his personal property from his room, including his

22   legal paperwork and extra mattresses he needed for his cracked ribs (count two); and (3) by

23

24   _____

25   [2] On March 1, 2006, the detention center staff again placed Plaintiff on suicide watch after his
return from court.  (Fraser Decl. at 3 & Exs. A-13, A-14.)  The detention center staff returned Plaintiff

26   to administrative segregation on March 8, 2006.  (Fraser Decl. at 3 & Ex. A-14.)  Plaintiff's Amended
Complaint does not include this time period within his allegations of unconstitutional conduct.

continuing to keep him on suicide watch after Defendant Fraser visited him in December 2005 and informing him that he was kept on suicide watch because of potential liability to the City (count three).  Plaintiff seeks relief in the form of compensatory and punitive damages.

Defendants move for summary judgment, contending they are entitled to qualified immunity because placing Plaintiff on suicide watch and limiting the property in Plaintiff's room were justified by the legitimate penological interest of keeping Plaintiff from harming himself.  Defendants also contend no clearly established law applies to Plaintiff's claims, and Defendants therefore are entitled to summary judgment.

Plaintiff responds that his claims rest not only on the fact that he was placed and kept on suicide watch long after the medical staff recommended he be released from suicide watch, but that the conditions under which Defendants kept him during his time on suicide watch violated his constitutional rights.  Plaintiff argues he was kept in an intake cell which is not designed for long-term housing rather than administrative segregation, contrary to policy.  Plaintiff claims that the intake cell had a large window through which others, including female guards, could see him dressed only in a suicide smock.  Plaintiff contends he was not permitted soap or a toothbrush to maintain basic hygiene and he was not permitted to exercise until October 1, 2005.  Plaintiff also contends Defendants took away his personal property in the form of legal papers and his mattresses even though they knew he needed the mattresses for his cracked ribs.  Finally, Plaintiff argues Defendants kept him under these conditions for months without giving him an administrative hearing to explain why he should be released from suicide watch.

## II.  LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  All justifiable inferences must be viewed in the light most favorable to the non-moving party.  <u>County of Tuolumne v. Sonora Cmty. Hosp.</u>, 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Fairbank v. Wunderman Cato Johnson</u>, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  <u>Id.</u>; <u>Far Out Prods., Inc. v. Oskar</u>, 247 F.3d 986, 997 (9th Cir. 2001).

**III.  DISCUSSION**

Title 42 U.S.C. § 1983 provides that "[e]very person who, under color of [law], subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . or other proper proceeding for redress."  42 U.S.C. § 1983.  Consequently, to establish liability under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  <u>Broam v. Bogan</u>, 320 F.3d 1023, 1028 (9th Cir. 2003).

When a government official is sued in his or her individual capacity for allegedly violating § 1983, the official may raise the affirmative defense of qualified immunity.[3]

---

[3] Although Plaintiff's Amended Complaint indicates he is suing Defendants in their official capacities, Defendants move for summary judgment on the ground of qualified immunity, a defense available to officials sued in their individual capacities.  In opposing Defendants' motion for summary judgment, Plaintiff has not contended qualified immunity is inapplicable or that he intended to sue Defendants in their official capacities.  The Court therefore will treat the Amended Complaint as a suit against Defendants in their individual capacities.  Furthermore, because Plaintiff fails to state a constitutional violation for all his claims except one, Defendants cannot be liable on those claims in any capacity.

Sonoda v. Cabrera, 255 F.3d 1035, 1042 (9th Cir. 2001).  Qualified immunity "insulates

government agents against personal liability for money damages for actions taken in good

faith pursuant to their discretionary authority."  Id.  In ruling on a qualified immunity

defense, a court first must consider whether the facts alleged show the defendants' conduct

violated a constitutional right.  Sorrels v. McKee, 290 F.3d 965, 969 (9th Cir. 2002).  In

making this determination, the court views the facts alleged in the light most favorable to

the party asserting the injury.  Id.  If the plaintiff has alleged a deprivation of a

constitutional right, the court then must determine whether that right was clearly

established.  Id.  A right is clearly established if "'it would be clear to a reasonable officer

that his conduct was unlawful in the situation he confronted.'"  Wilkins v. City of Oakland,

350 F.3d 949, 954 (9th Cir. 2003) (emphasis omitted) (quoting Saucier v. Katz, 533 U.S.

194, 202 (2001)).  The court should make this second inquiry "in light of the specific

context of the case, not as a broad general proposition."  Saucier, 533 U.S. at 201.  The

plaintiff bears the burden of showing that the right at issue was clearly established.  Sorrels,

290 F.3d at 969.

     The Eighth Amendment to the United States Constitution prohibits "cruel and

unusual" punishment.[4]  U.S. Const. amend. VIII.  To establish a constitutional deprivation

under the Eighth Amendment, the plaintiff must show the alleged deprivation was

---

[4] It is unclear from the parties' submissions whether Plaintiff was a pretrial detainee or was a convicted prisoner during all or part of the time Plaintiff was on suicide watch.  The Fourteenth Amendment's Due Process clause governs questions regarding the confinement of pretrial detainees, rather than the Eighth Amendment, which governs the treatment of convicted prisoners.  Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1120 (9th Cir. 2003).  Because a pretrial detainee's due process rights are "'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" courts use the Eighth Amendment's guarantees as a "minimum standard of care" for determining a pretrial detainee's rights."  Id. (quoting Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (emphasis omitted)).  The Court therefore will analyze Plaintiff's claims under the Eighth Amendment, and will comment on the Fourteenth Amendment Due Process clause only if the results under that clause would be different.

"'sufficiently serious.'"  Hearns v. Terhune, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting

Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the governmental actor must have a

"'sufficiently culpable state of mind.'"  Id. (quoting Wilson, 501 U.S. at 297).

With respect to whether the deprivation was sufficiently serious, "'[b]ecause

routine discomfort is part of the penalty that criminal offenders pay for their offenses

against society, only those deprivations denying the minimal civilized measure of life's

necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'"

Somers v. Thurman, 109 F.3d 614, 623 (9th Cir. 1997) (quoting Hudson v. McMillian, 503

U.S. 1, 9 (1992)).  "Prison officials have a duty to ensure that prisoners are provided

adequate shelter, food, clothing, sanitation, medical care, and personal safety." Johnson v.

Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  In determining whether an Eighth Amendment

violation has occurred, the court must consider the "circumstances, nature, and duration" of

the alleged deprivations of these necessities.  Id.  "'The more basic the need, the shorter the

time it can be withheld.'"  Id. (quoting Hoptowit v. Ray, 682 F.2d 1237, 1259 (9th Cir.

1982)).

### A.  Placement on Suicide Watch

Plaintiff was placed on suicide watch following his suicide attempt and kept on

suicide watch for several months thereafter.  Plaintiff does not allege cruel and unusual

punishment from his initial classification, but Plaintiff alleges keeping him on suicide watch

for an extended period of time, particularly after medical staff recommended releasing him

from suicide watch, was cruel and unusual.

"Because the mere act of classification 'does not amount to an infliction of

pain,'" the Eighth Amendment does not prohibit inmate classification.  Myron v. Terhune,

476 F.3d 716, 719 (9th Cir. 2007) (quoting Hoptowit, 682 F.2d at 1251).  Consequently,

Plaintiff has not raised a genuine issue of material fact that Defendants' classification of

Plaintiff on suicide watch, either initially or through their periodic reviews, constituted

Eighth Amendment violations, although certain conditions imposed while Plaintiff was on suicide watch may have violated the Eighth Amendment.  The Court therefore will grant Defendants' motion for summary judgment regarding Plaintiff's claim that classifying him on suicide watch violates the Eighth Amendment.

### B.  Maintenance on Suicide Watch Without a Hearing

In his opposition, Plaintiff presents evidence Defendants kept him on suicide watch for five months without affording him a hearing at which he could present reasons why he should be taken off suicide watch.  Plaintiff does not make a specific allegation in his Amended Complaint regarding the lack of a hearing, however, he states several times in his Amended Complaint that he complained to Defendants that he should be taken off suicide watch and that he was on suicide watch too long, but Defendants refused to remove him from suicide watch.

Even if the Court liberally construed Plaintiff's Amended Complaint to include a claim that Defendants violated his Fourteenth Amendment Due Process rights by failing to give him an administrative hearing, Plaintiff has failed to present sufficient evidence to survive summary judgment on this claim.  Prisoners have no liberty interest arising directly from the Fourteenth Amendment Due Process clause in avoiding a transfer to more adverse confinement conditions.  Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Anderson v. County of Kern, 45 F.3d 1310, 1315 (9th Cir. 1995) ("[T]here is no liberty interest in remaining in the general population.").  However, an inmate may possess a state-created liberty interest when his confinement "imposes an atypical and significant hardship . . . in relation to the ordinary incidents of prisoner life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  To determine whether a restraint is an atypical and significant hardship, the court considers (1) differences between the challenged condition and the conditions imposed on inmates in administrative segregation and protective custody; (2) the condition's duration and the degree of restraint; and (3) whether the condition inevitably will affect the duration

of the prisoner's sentence.  <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003).

Determining whether a condition is an atypical and significant hardship is a fact dependent

analysis.  <u>Id.</u>

Here, the Court has before it only Department policy on suicide watch and thus

has no baseline to compare conditions on suicide watch to either the general inmate

population or inmates on administrative segregation.  Plaintiff therefore has failed to

present evidence regarding the differences in conditions of confinement between prisoners

on suicide watch and the conditions of confinement generally.  With respect to the second

factor, Plaintiff was on suicide watch for five months, a significant length of time.

However, placing Plaintiff on suicide watch did not lengthen Plaintiff's sentence.  Because

Plaintiff has failed to present necessary evidence supporting this claim, and because placing

Plaintiff on suicide watch did not lengthen Plaintiff's sentence, Plaintiff has failed to raise a

genuine issue of material fact that Defendants violated Plaintiff's due process rights by

failing to give him an administrative hearing enabling him to challenge his stay on suicide

watch.  The Court therefore will grant Defendants' motion for summary judgment on

Plaintiff's claim regarding the lack of an administrative hearing.

**C.  Intake Room 7A**

Plaintiff argues he was held in intake room 7A during suicide watch, a room not

designed for long term occupancy.  Viewing all evidence in Plaintiff's favor, Plaintiff has

failed to raise a genuine issue of material fact that housing him in intake room 7A was

sufficiently serious to constitute a constitutional violation.  Although Plaintiff states this

room was not designed for long term housing, he does not describe any particular

deficiency with the room that made it unsuitable for long term occupancy.  The Court

therefore will grant Defendants' motion for summary judgment as to Plaintiff's claim

regarding being housed in intake room 7A as unsuitable for long term occupancy.

///

### D. Cold Room

In his verified Amended Complaint, Plaintiff states he told Defendants Freeman and Baldwin his room was cold, particularly because he was forced to wear only a thin garment and sleep naked.  Plaintiff avers Defendants Freeman and Baldwin told him they would fix the vent in his room but they did not.

"The Eighth Amendment guarantees adequate heating."  Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996), as amended by 135 F.3d 1318 (9th Cir. 1998), (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).  However, an allegation that the temperature was merely uncomfortable is insufficient to state an Eighth Amendment claim.  Id.

Plaintiff has presented no evidence the temperature in the room was anything more than uncomfortably cold.  Plaintiff therefore has failed to raise a genuine issue of material fact regarding a sufficiently serious deprivation due to inadequate heating.  The Court will grant Defendants' motion for summary judgment as to Plaintiff's claim regarding room temperature.

### E. Privacy

Plaintiff was kept in a room with a large window on the door through which female guards who regularly work in the intake area could view him wearing nothing more than a thin suicide smock.  Plaintiff contends this violated his privacy and subjected him to humiliation and mental anguish.

Inmates have a "limited right to bodily privacy."  Michenfelder v. Sumner, 860 F.2d 328, 333 (9th Cir. 1988).  However, female prison guards infrequently and casually observing unclothed male inmates at a distance during the course of their duties as prison employees does not constitute a sufficiently serious deprivation to violate the inmates' Eighth or Fourteenth Amendment rights.  See Somers, 109 F.3d at 623 (holding cross-gender searches do not violate the Eighth Amendment); Michenfelder, 860 F.2d at 333-34 (holding strip searches of male inmates indirectly viewed by female officers did not

violate Fourth or Eighth Amendment); Grummett v. Rushen, 779 F.2d 491, 494-95 (9th Cir.

1985) (indirect observation of male inmates' shower area by female guards does not violate

the Fourteenth Amendment).  The Court therefore will grant Defendants' motion for

summary judgment on Plaintiff's claim regarding female guards observing Plaintiff while in

the intake room.[5]

### F. Hygiene

The Eighth Amendment guarantees sanitation, and the denial of basic personal

hygiene supplies, such as toothbrushes and soap, can violate the Eighth Amendment.

Keenan, 83 F.3d 1083, 1091 (9th Cir. 1996); Hoptowit, 682 F.2d at 1246.  Unsanitary

conditions which are severe or prolonged may violate the Eighth Amendment.  Anderson v.

County of Kern, 45 F.3d 1310, 1314-15 (9th Cir. 1995), amended by 75 F.3d 448 (9th Cir.

1995).

Plaintiff has presented evidence he was not allowed soap and a toothbrush while

on suicide watch, a period of approximately five months, or after Defendants removed all

personal items from his room, a period of one and a half months.[6]  It is unclear from the

parties' submissions whether Plaintiff was denied all access to basic personal hygiene

supplies or whether Plaintiff was permitted to use such items but simply could not keep

them in his room pursuant to Department policy.  Because the Court must view all evidence

---

[5] Although Plaintiff states in his opposition that female inmates also observed him while he
was in the intake room, Plaintiff presents no evidence to that effect.

[6] Plaintiff's Amended Complaint does not specifically include a claim that Defendants denied
him basic hygiene supplies.  However, the Amended Complaint alleges Defendants removed all
personal items from Plaintiff's room On December 17, 2005.  The Court construes liberally a pro se
plaintiff's complaint.  Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003).  Plaintiff's allegation
regarding the removal of his personal items is broad enough to include an allegation that Defendants
removed his personal hygiene items from his room.  Defendants specifically responded to Plaintiff's
allegation regarding the denial of hygiene supplies in Defendants' Reply.  The Court therefore will
consider Plaintiff's claim regarding the denial of hygiene supplies.

in the light most favorable to Plaintiff, Plaintiff has raised a genuine issue of material fact that Defendants deprived him of basic personal hygiene supplies for a prolonged period of time sufficient to state an Eighth Amendment violation.  Furthermore, the law requiring prison officials to supply prisoners with basic personal hygiene supplies was clearly established by no later than 1995.  Consequently, Plaintiff has raised a genuine issue of material fact that Defendants violated his clearly established Eighth Amendment right to personal hygiene supplies.[7]  The Court therefore will deny Defendants' motion for summary judgment with respect to Plaintiff's personal hygiene claim.

### G.  Removal of Personal Property

Defendants removed papers from Plaintiff's room, including his legal paperwork. Plaintiff has presented no authority that prisoners have a clearly established right to keep personal property, including legal paperwork, in their cells or rooms.  Plaintiff therefore has failed to raise a genuine issue of material fact that Defendants violated Plaintiff's Eighth Amendment rights by removing the legal paperwork from Plaintiff's room.  To the extent Plaintiff claims Defendants' activities infringed on his right of access to the courts, Plaintiff has failed to demonstrate "'actual injury,' i.e. 'some specific instance in which [Plaintiff] was actually denied access to the courts.'"  Keenan, 83 F.3d at 1094 (quoting Sands v. Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989)).  The Court therefore will grant Defendants' motion for summary judgment regarding Plaintiff's claim regarding removal of personal property.

### H.  Removal of Mattress

Plaintiff had two mattresses in his room due to his cracked ribs.  Defendants Tremar and Candia twice removed the mattresses from Plaintiff's room, leaving Plaintiff to sit on the cement floor of his room and suffer pain from his rib injuries.

---

[7]   Defendants do not argue Plaintiff failed to raise a genuine issue of material fact that Defendants had a sufficiently culpable state of mind.

Prison officials violate the Fourteenth Amendment's due process clause if they do not provide pretrial detainees with a bed or mattress.  Thompson v. City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir. 1989).  Because depriving a pretrial detainee of a bed or mattress "unquestionably constitutes a cognizable Fourteenth Amendment claim," the Court concludes the Eighth Amendment likewise would require prison officials to provide minimal bedding to convicted prisoners.  Id.

Plaintiff has raised a genuine issue of material fact that Defendants removed the mattresses from his room and left him to sit on a cement floor.  However, Plaintiff's own allegations indicate a sergeant returned one mattress to him within hours.  (Am. Compl. at 5 ["I cried for hours until one sergeant, Sergeant Sanford, allowed me one mattress."].)  Because Plaintiff was without bedding for only "hours," Plaintiff has failed to raise a genuine issue of material fact that the alleged deprivation was a sufficiently serious deprivation of a basic human need rising to the level of an Eighth or Fourteenth Amendment violation.  The Court therefore will grant Defendants' motion for summary judgment as to Plaintiff's claim regarding the removal of his mattresses.

**I.  Outdoor Exercise**

Plaintiff claims he was not permitted to exercise outdoors from the period of August 26, 2005 until October 1, 2005.  Although Plaintiff presents evidence regarding this claim, even a liberal reading of Plaintiff's Amended Complaint does not support finding Plaintiff alleged such a claim in the Amended Complaint.  The Amended Complaint refers to Plaintiff being "limited to very strict time out of [his] room," that he "asked for more time out of [his room]" on December 12, 2005, and that while he "was out on [his] approved one hour out of [his] room," Defendants removed items from his room.  (Am. Compl. at 3-5.)  None of these allegations give Defendants fair notice that Plaintiff was alleging a complete denial of all outdoor exercise privileges from August 26, to October 1, 2005.  The Court therefore will not consider Plaintiff's new claim that Defendants deprived

him of outdoor exercise.

**IV.  CONCLUSION**

        IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #43) is hereby GRANTED in part and DENIED in part.  The motion is denied with respect to Plaintiff's claim that Defendants violated his constitutional rights by depriving him of basic personal hygiene items.  The motion is granted in all other respects.

DATED:  August 16, 2007.

_____
            PHILIP M. PRO
            United States District Judge